IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| VANELLA G. LUCAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:07cv673-WC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff Vanella G. Lucas (Lucas) applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (2000) (the Act), alleging she was unable to work because of a disability.  Lucas's application was denied at the initial administrative level.  Lucas then requested and received a hearing before an Administrative Law Judge (ALJ).  Following the hearing, the ALJ also denied the claims.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the Court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #10); Def.'s Consent to Jurisdiction (Doc. #9). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the Commissioner's decision.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).²

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

²A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an

---

[3]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ISSUES

#### A.   *Introduction*

Lucas was thirty-nine years old and had completed the twelfth grade at the time of the hearing before the ALJ. (Tr. 30 & 66). Lucas's prior work experience included employment

4

as a Sterile Processing Technician (semi-skilled, light), Cashier - K Mart (semi-skilled, light), Certified Nursing Assistant (semi-skilled, light to medium), Sterilizer, Medical, Operating Room Technician (semi-skilled, light), and Pharmacy Technician - CVS (semi-skilled, light). (Tr. 29).

Employing the five step process, the ALJ found Lucas had not engaged in substantial gainful activity at any time relevant to the decision (Step 1). (Tr. 30). At Step 2, the ALJ found Lucas suffered from the following severe impairments: status post right tibial pilon fracture, open reduction internal fixation surgery; status post right Lisfranc joint dislocation with open reduction internal fixation surgery; status post right medial cuneiform split fracture with open reduction internal fixation surgery; status post right metatarsal cuboid dislocation with open reduction internal fixation surgery; right ankle joint range of motion limitation; chronic pain syndrome right leg; and obesity. *Id*. Nonetheless, the ALJ found Lucas did not possess an impairment or combination of impairments that met or equaled the criteria of any listed impairment set forth in the Listing of Impairments (Step 3). *Id*. At Step 4, the ALJ determined Lucas did not possess the residual functional capacity (RFC) to perform any relevant past work. *Id*.

At Step Five, the ALJ evaluated Lucas's RFC, age, education, and work experience, as well as testimony from a vocational expert (VE) regarding the availability in significant numbers of other work Lucas could perform in the national economy. Upon consideration of this evidence, the ALJ determined Lucas possessed the RFC to perform jobs that exist in

significant numbers in the national economy. *Id*. Consequently, the ALJ found Lucas was not disabled within the meaning of the Act. *Id.*

### *B.     Lucas's Claims*

Lucas presents three issues for this Court to consider:  (1) Whether the ALJ properly discredited the opinion of Lucas's treating physician;  (2) Whether the ALJ properly determined Lucas's RFC;  and (3) Whether the ALJ properly considered Lucas's alleged need for a cane.

## IV.   DISCUSSION

### *A.*     **Whether the ALJ properly discredited the opinion of Lucas's treating physician.**

Lucas argues the ALJ erred by failing to afford proper weight to Doctor Caroline Folashade's (Dr. Folashade) Medical Source Statement (MSS). The Commissioner argues the ALJ properly disregarded Dr. Folashade's conclusions as they were not supported by objective medical evidence.

"The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" may exist where: (1) "the [treating physician's] opinion was not bolstered by the evidence;" (2) "the evidence supported a contrary finding;", or (3) "the [treating physician's] opinions were conclusory or inconsistent with their own medical records." *Id.* The ALJ must clearly articulate,

however, the reasons for giving less weight to the opinion of a treating physician, and the failure to do so constitutes reversible error. *Id.*

In this case the ALJ expressly stated that he gave little weight to Dr. Folashade's opinion. The ALJ stated his reasons as follows:

> The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. The doctor did not have the benefit of reviewing the other medical reports contained in the current record . . . The record reflects significant gaps in the claimant's history of treatment. At the time of the hearing, there was no additional "diagnostic" medical evidence of record since December 2003, at Emory Hospital and Clinic, for the medical expert to review.

(Tr. 28). As pointed out by the Commissioner, Dr. Folashade did not begin treating Lucas until April of 2005, yet Dr. Folashade determined that Lucas was unable to perform even sedentary work since 2003. (Tr. 27-28). That determination is inconsistent with the plethora of medical treatment notes, examinations, and findings in the record from 2003 - 2005. *See* (Tr. 26-29). Thus, the ALJ, properly determined that Dr. Folashade's opinion was unsupported by the evidence.

The ALJ also found that Dr. Folashade's determination was inconsistent with her own treatment notes. As the ALJ noted: "[Dr. Folashade's] own reports failed to reveal the type of significant clinical and laboratory abnormalities *(normal* MRI of the lumbar spine and *minimal questionable* compression fracture at T3) one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness." (Tr. 28). Although

Lucas had claimed she was in disabling pain, Dr. Folashade's notes indicate a six month period of time in which Lucas took no pain medication. Dr. Folashade's notes also lack significant abnormal findings, such that would support a finding that Lucas was unable to perform even sedentary work.

Therefore, the ALJ clearly articulated "good cause" for rejecting Dr. Folashade's opinion, by determining that the doctor's opinion was not supported by the record and the doctor's treatment notes did not support her final opinion. Accordingly, the ALJ properly discredited Dr. Folashade's opinion.

### B.     *Whether the ALJ Properly Determined Lucas's RFC*

The ALJ determined Lucas had the RFC to:

> perform light work with a sit/stand option, within the limitations as set forth in the medical source opinion (physical) completed by Dr. Pacquiao (Exhibit 9F, pages 3-5) with the following additions/changes: she can sit 6 hours without interruption 2 hours, she can stand 4 hours without interruption 30 minutes, she cart walk 4 hours without interruption 30 minutes, she can lift, carry, push and pull frequently up to 10 pounds over and occasionally up to 20 pounds, she should avoid climbing ladders, ropes, and scaffolds, she should avoid activities involving unprotected heights, she should avoid being around moving and hazardous machinery or driving motorized vehicles, and she experiences mild to moderate pain which occasionally affects her ability to maintain concentration, persistence and pace.

(Tr. 28A). Lucas argues the "ALJ failed to include Dr. Pacquiano's limitation to only reaching overhead (Tr. 420). He also failed to address Dr. Pacquiano's opinion that Ms. Lucas is capable of only occasional use of the right leg." (Doc. # 17 at 9-10).

8

First, Dr. Pacquiano did not limit Lucas to only reaching overhead, *se*e (Tr. 420), and second, the ALJ did address Dr. Pacquiano's opinion that Lucas is capable of occasional use of the right leg. *Id*. In fact, according to Dr. Pacquiano's report, Lucas also was limited to occasional use of her left leg. *Id*. The ALJ clearly took those determinations into consideration when he relied on Dr. Pacquiano's opinions when determining Lucas's RFC. The ALJ's additions/changes to Dr. Pacquiano's opinion weighed in Lucas's favor. Where Dr. Pacquiano determined that Lucas could sit for four hours at a time, the ALJ determined Lucas could only sit for 2 hours without interruption. (Tr. 28A). With the exception of that finding, which benefitted Lucas, there was nothing in the ALJ's determination that was inconsistent with Dr. Pacquiano's determinations.

The ALJ properly determined Lucas's RFC, and the determination is supported by substantial evidence.

### C.  *Whether the ALJ Properly Considered Plaintiff's Alleged Need for a Cane*

Finally, Lucas argues "[she] was prescribed a cane on September 12, 2003 . . . None of the treating or examining doctors of record have prohibited her from using the cane as unnecessary . . . Yet without explanation, the ALJ failed to address Ms. Lucas's cane usage or how it impacts upon her ability to perform work-related functions." (Doc. #17 at 11). Lucas relies on Social Security Ruling 96-9p, which states in relevant part:

> Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or

9

> standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

SSR 96-9p, 61 Fed. Reg. 34482 (July 2, 1996). Thus, in order for the ALJ to find Lucas's use of a cane as medically necessary, there must be medical documentation establishing a need for the cane.

It is clear from the record that the ALJ did consider Lucas's use of a cane. The ALJ's decision mentions of Lucas's use of a cane several times, including: the ALJ's summary of Lucas's testimony (Tr. 19); Doctor Labib's prescription for the cane (Tr. 21); Lucas's statement to Doctor Underwood regarding advice Lucas had received from another doctor regarding the use of the cane (Tr. 22); and the mention of the cane in Doctor Golomb's consultive physical examination.

While these mentions of the cane by the ALJ are important to note, in relation to deciding whether he considered Lucas's use of a cane in making his ultimate determination, it is equally important to note that the ALJ's discussion of the cane was a clear rejection of it as a medical requirement. The ALJ included in his decision Lucas's own mention to Doctor Underwood that Lucas "was starting to have a little bit more aches and pains as a result of ambulating with a crutch." (Tr. 21). The ALJ also pointed out that on 3 August 2004, Lucas told Doctor Underwood "an orthopedist in Atlanta, where she had been living previously, [said] that she really should be walking without a cane but she stated that her gait

was not steady and she was not sure whether she really should be using it or not." (Doc. #22). In addition, when the ALJ discussed Doctor Labib's prescription for the cane, the ALJ specified that the prescription was given at Lucas's request. (Tr. 19); *see also* (Tr. 326).

Clearly the ALJ complied with SSR 96-9p and considered the particular facts of Lucas's case and determined that Lucas's use of a cane was not medically necessary. In addition there is no credible medical documentation establishing the need for the cane and in fact the evidence in the record suggests the opposite may be true.

**V.   CONCLUSION**

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion and Order*, the Court concludes the ALJ's non-disability determination and denial of benefits is supported by substantial evidence. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate judgment is entered herewith.

DONE this 22nd day of October, 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE